## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

JAMES R. WRIGHT, D.M.D., P.S.C., and
WRIGHT DENTAL CENTER, PLLC,

       Plaintiffs,                                **CLASS ACTION**

v.                                                 **JURY DEMAND**

THE HARTFORD FINANCIAL SERVICES
GROUP, INC., HARTFORD CASUALTY
INSURANCE COMPANY, and TWIN CITY
FIRE INSURANCE COMPANY,

       Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiffs James R. Wright, D.M.D., P.S.C., ("Wright DMD") and Wright Dental Center, PLLC ("Wright Dental") (together, "Plaintiffs") on behalf of themselves and all others similarly situated, state as follows for their Complaint against Defendants, The Hartford Financial Services Group, Inc. ("the Hartford") and Hartford Casualty Insurance Company ("Hartford Casualty") and Twin City Fire Insurance Company ("Twin City") (together, "Defendants").

### INTRODUCTION

1.     This is a class action brought by Plaintiffs against Defendants the Hartford, Hartford Casualty, and Twin City related to insurance policies that insure Plaintiffs' properties, business operations, and potential liability in connection with Plaintiffs' business operations. These insurance policies include Business Income coverage, Extra Expense coverage, coverage for loss due to the actions of a Civil Authority, and Business Income from Dependent Properties, and contain no relevant virus exclusion.

2.      Plaintiffs are two dental offices that purchased Defendants' insurance policies and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Defendants to honor their contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiffs were forced to close their dental offices due to the COVID-19 pandemic. All across the country, including in Florida, government authorities issued closure orders to businesses, including the businesses operated by Plaintiffs, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiffs, filed claims for Business Income coverage, Extra Expense coverage, coverage for losses due to the actions of a Civil Authority, and Business Income from Dependent Properties.

3.      In response to the business interruption claims filed by Plaintiffs and thousands of other class members resulting from the COVID-19 pandemic, Defendants have systematically denied and continue to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendants' decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiffs and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses they has sustained.

CLASS ACTION COMPLAINT

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Wright MD is a Professional Services Corporation organized under Kentucky law with its principal place of business in Union, Kentucky.

5.      Plaintiff Wright Dental is a Limited Liability Company organized under Kentucky law with its principal place of business in Cold Spring, Kentucky. The manager of Wright Dental is a resident of Kentucky.

6.      Defendant the Hartford is a Connecticut business corporation with its principal place of business in Hartford, Connecticut. The Hartford is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Kentucky, and in all fifty states, including in states like Florida, and including by and through its wholly-owned subsidiaries.

7.      Defendant Hartford Casualty is an Indiana corporation with its principal place of business in Hartford, Connecticut. Defendant Hartford Casualty is a wholly-owned subsidiary of Defendant the Hartford.

8.      Defendant Twin City is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Defendant Twin City is a wholly-owned subsidiary of Defendant the Hartford.

9.      At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Florida by issuing and selling insurance policies in Florida and by contracting to insure property located in Florida.

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

13.      This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Florida; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in Florida. Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of Florida by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## FACTUAL BACKGROUND

A.  *Insurance Coverage*

14.     On or about November 16, 2019, Wright MD renewed the Policy, a property insurance policy issued and underwritten by Defendants. The insured premises under the policy is 2004 Calle Way Suite 101, Union KY 41091. A copy of the Wright MD Policy is attached as Exhibit A.

15.     On or about February 20, 2020, Wright Dental renewed the Policy, a property insurance policy issues and written by the Defendants. The insured premises are 3760 Alexandria Pike, Newport KY 41706. A copy of the Wright Dental Policy is attached as Exhibit B.

16.     The Wright Dental Policy and Wright MD Policy are materially identical and accordingly shall be referred to collectively as the "Policy."

17.     The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issues by Defendants to the members of the putative class as defined herein.

18.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

19.     In accordance with the all-risk nature of the Policy, Defendants agreed to pay for all losses caused by a "Covered Cause of Loss," defined as 'RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited in the Policy.

20.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income."

21.     Pursuant to this coverage, Defendants promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendants promised to pay for the "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss or physical damage to property at the 'scheduled premises', including personal property in the open (or in a vehicle) within 1,000 feet of the 'scheduled premises', caused by or resulting from a Covered Cause of Loss.

CLASS ACTION COMPLAINT

22.     The Policy defines "Business Income" as "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

23.     "Suspension" means, among other things, "(a) The partial slowdown or complete cessation of your business activities."

24.     "Period of Restoration" means:

     … the period of time that:

     a.  Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

     b.  End on the date when:

          (1) The property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality;

          (2) The date when your business is resumed at a new, permanent location.

25.     Additionally, under the Policy, Defendants also promised to cover "Extended Business Income." This coverage requires Defendants to pay for loss of business income beyond the Period of Restoration under certain conditions.

26.     Specifically, Defendants promised to pay for the actual loss of Business Income during the period that begins on the date that the insured property is repaired, and ends either 30 days thereafter or on the date when operations are restored to the level which would generate business income at normal levels, whichever is earlier.

27.     The Policy also provides a coverage for extra expenses in a section titled "Extra Expense." Pursuant to this section of the Policy, Defendants promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"

28.     Defendants also promised to cover "Business Income from Dependent Properties" under the Policy. Subject to limits of insurance, this coverage requires Defendants to "pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property."

29.     The Policy also provides "Civil Authority" coverage for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'." This coverage begins "72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority."

30.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

31.     Plaintiffs' Policy does not contain any exclusion that would apply to allow Defendants to deny coverage for losses caused by the interruption of Plaintiffs' business and the actions of civil authorities.

32.     The Policy does not contain any exclusion which would apply to allow Defendants to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

33.     Because the Policy is an all-risk policy and does not exclude Plaintiffs' losses, Plaintiffs' losses are covered up to the applicable limits of insurance.

**B.  *The COVID-19 Pandemic***

34.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 118,000 Americans have died due to COVID-19.

35.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

36.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

37.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

38.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

39.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

40.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

41.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

C.  *The Covered Cause of Loss*

42.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' business (the "Closure Orders").

43.     As of the date this complaint is filed, Kentucky had over 30,000 COVID-19 cases and over 750 deaths.

44.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiffs in Kentucky, have issued a Closure Order restricting and prohibiting access to Plaintiffs' insured property and the insured properties of other putative class members.

45.     Kentucky Governor Andy Beshear signed Executive Order 2020-215 declaring a state of emergency throughout the Commonwealth due to the outbreak of the COVID-19 outbreak on March 6, 20202. On March 13, Governor Beshear recommended that Kentucky hospitals cease performing elective procedures on March 18, 2020. Then, on March 18, 2020, Kentucky's Secretary for the Cabinet for Health and Family Services, issued an order directing all healthcare providers in Kentucky to cancel all procedures in the opinion of a physician the delay will not

cause harm to the patient or negatively affect the patient's life expectancy. As a result of this order, Plaintiffs' businesses ceased on March 18, 2020.

46.     On March 26, 2020, Governor Beshear entered Executive Order 2020-246 which required all non-sustaining businesses to close to in-person services.

47.     Closure Orders entered by municipal and county governments throughout Florida recognize that COVID-19 poses a threat to the loss of property.

48.     Closure Orders containing statements recognizing that COVID-19 causes business income loss and loss of property and property damage have been issued by many Florida counties, including Broward, Escambia, Gadsden, Hillsborough, Martin, Orange, Osceola, Pinellas, St. Lucie, and Walton Counties. *See* Broward Cnty. Administrator's Emergency Order 20-01 ("this Emergency Order is necessary because of the propensity of the virus to spread person to person and also because the virus is *physically causing property damage* due to its proclivity to attach to surfaces for prolonged periods of time."); Escambia Cnty. Res. 2020-37 ("COVID-19 and infection diseases have the capacity to pose a significant, imminent, and dangerous threat to the health, safety, and welfare of the inhabitants of Escambia County, Florida, visitors and tourists to Escambia County, Florida, *as well as to their real and personal property* . . . the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, *thus causing property damage* and continuing the spread of the virus.") (emphasis added); Gadsden Cnty. Res. 2020-014 ("there is reason to believe that COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons, *and property loss and damage* in certain circumstances.") (emphasis added); Hillsborough Cnty. Exec. Order dated March 27, 2020 (stating COVID-19 is

"creating property or business income loss and damage"); Martin Cnty. Emergency Order 20-04 (stating COVID-19 is "creating property or business income loss and damage"); Orange Cnty. Emergency Executive Order No. 2012-12 (stating that "COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons"); Osceola Cnty. Emergency Order No. 2 (stating COVID-19 causes a "serious threat to life *and property* within the County") (emphasis added); Pinellas Cnty. Res. 20-20 (stating COVID-19 causes "property loss and damage"); St. Lucie Cnty. Order dated March 31, 2020 ("COVID-19 is causing property damage and business income loss due to its proclivity to attach to surfaces for prolonged periods of time and thereby creating a dangerous physical condition; and [a]s a governmental civil authority action, it is necessary to impose the regulations and restrictions set forth herein in response to the dangerous physical conditions that currently exist and to stop the COVID-19 virus from spreading."); Walton Cnty. Resolution 2020-10 ("the novel coronavirus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time.").

49.     Closure Orders containing similar statements recognizing that COVID-19 causes business income loss and loss of property and property damage have also been issued by many Florida municipalities, including City of Aventura, City of Coral Springs, Town of Indian Shores, City of Lauderdale Lakes, City of Miami, City of North Miami, City of Oakland Park, City of Sarasota, and City of Venice. *See* City of Aventura Order dated March 24, 2020 (explaining the COVID-19 "virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time"); City of Coral Springs Emergency Order 2020-11 ("COVID-19 attaching to surfaces contaminates the area and therefore also causes property damage . . . the virus

physically is causing property damage"); Town of Indian Shores Resolution 05-2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus."); City of Lauderdale Lakes Emergency Order 2020-01 ("the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."); City of Miami Decl. of a State of Emergency dated March 26, 2020 ("COVID-19 may be spread amongst the population by various means of exposure, including the propensity to spread person-to-person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances"); City of North Miami "Safer at Home" Emergency Order ("this Order is given because of the propensity of the virus to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Oakland Park Proclamation 2020-002 ("This Order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Sarasota Emergency Order dated May 1, 2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus"); City of Venice Executive Order 2020-01 ("COVID-19 has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus").

50.     Some state courts have already agreed with Plaintiffs' position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

51.     Furthermore, orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

52.     The Closure Orders issued by civil authorities covering non-essential businesses in Florida and Kentucky (such as Plaintiffs') are similar to Closure Orders that have been issued nationwide by state and local civil authorities.

53.     The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

54.     The Closure Orders of civil authorities prohibited access to Plaintiffs and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

55.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiffs and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses. Plaintiffs have also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.

56.     Plaintiffs' losses and expenses have continued through the date of filing this action.

57.     Plaintiffs' losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiffs have complied with its contractual obligations, Plaintiffs are entitled to payment for these losses and expenses.

58.     Consistent with the terms and procedures of the Policy, Plaintiffs submitted claims for loss to Defendants under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

59.     In violation of the Policy's plain language and its own contractual obligations, Defendants denied Plaintiffs' claim and refuse to pay for Plaintiffs' losses and expenses.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

61.     Plaintiffs seek to represent nationwide classes defined as:

a.      All persons and entities with Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

b.      All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

c.      All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendants that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

d.  All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy issued by Defendants that suffered an actual loss of Business Income caused by direct physical loss or physical damage at a dependent property or properties ("the Business Income from Dependent Properties Declaratory Judgment Class").

62.  Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

63.  This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

64.  **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

65.  **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

a. Defendants issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

b. whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c. whether Defendants wrongfully denied all claims based on COVID-19;

d. whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19;

e. whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f. whether Defendants' Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g. whether Defendants' Business Income from Dependent Properties coverage applies to a loss of income caused by loss or damage to dependent properties;

h. whether Defendants have breached their contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

i. whether Plaintiffs and the classes are entitled to an award of reasonable attorney fees, interest and costs.

66.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class Members' claims because Plaintiffs and the other Class Members are all similarly affected by Defendants' refusal to pay under their Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. Plaintiffs' claims are

based upon the same legal theories as those of the other Class Members. Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

67.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class Members who they seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

68.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs seek class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

69.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other Class

Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members.

70.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

71.     Plaintiffs repeat and reallege Paragraphs 1-70 as if fully set forth herein.

72.     Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

73.     Plaintiffs' policy with Defendants, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class Members' losses for claims covered by the policy.

74.     Plaintiffs and the other Business Income Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous

terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Business Income Declaratory Judgment Class Members are entitled.

75.    Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

76.    An actual case or controversy exists regarding Plaintiffs and the other Business Income Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

77.    Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.    Plaintiffs and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.    Defendants are obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

78.     Plaintiffs repeat and reallege Paragraphs 1-70 as if fully set forth herein.

79.     Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

80.     Plaintiffs' insurance policy with Defendants, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

81.     Plaintiffs and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class Members are entitled.

82.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

83.     An actual case or controversy exists regarding Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil

Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

84.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

     a.   Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

     b.   Defendants are obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

### COUNT III
### DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

85.     Plaintiffs repeat and reallege Paragraphs 1-70 as if fully set forth herein.

86.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

87.     Plaintiffs' insurance policy with Defendants, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

88.     Plaintiffs and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class Members are entitled.

89.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

90.     An actual case or controversy exists regarding Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

91.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.   Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.   Defendants are obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure

Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT IV**
**DECLARATORY JUDGMENT – BUSINESS INCOME FROM DEPENDENT PROPERTIES COVERAGE**
**(Claim Brought on Behalf of the Business Income from Dependent Properties Declaratory Judgment Class)**

92.     Plaintiffs repeat and reallege Paragraphs 1-70 as if fully set forth herein.

93.     Plaintiffs bring this Count both individually and on behalf of the other members of the Business Income from Dependent Properties Declaratory Judgment Class.

94.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

95.     Plaintiffs' Policy, as well as the policies of other Business Income from Dependent Properties Declaratory Judgment Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Business Income from Dependent Properties Declaratory Judgment Class members' losses for claims covered by the Policy.

96.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained due to direct physical loss or physical damage at the premises of a dependent property.

97.     Plaintiffs and Business Income from Dependent Properties Declaratory Judgment Class members suffered losses of business income due to direct physical loss and/or physical damage at the premises of dependent properties.

98.     These losses triggered business income from dependent properties coverage under the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies.

99. Plaintiffs and the other Business Income from Dependent Properties Declaratory Judgment Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

100. Defendants, without justification, dispute that the Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for these losses.

101. Plaintiffs seek a Declaratory Judgment that its Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

102. An actual case or controversy exists regarding Plaintiffs' and other Business Income from Dependent Properties Declaratory Judgment Class members' rights and Defendants' obligations to reimburse Plaintiffs and other Business Income from Dependent Properties Declaratory Judgment Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

103. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a. The Policy and other Business Income from Dependent Properties Declaratory Judgment Class members' policies provide coverage for Class members' losses of business income from dependent properties.

b. Defendants are obligated to pay Plaintiffs and the other Business Income from Dependent Properties Declaratory Judgment Class Members the full amount of the contingent income losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class Members, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representative, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.  Entering declaratory judgments on Counts I–IV in favor of Plaintiffs and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, Extra Expense Declaratory Judgment Class, and the Business Income from Dependent Properties Declaratory Judgment Class, as follows:

   i.  Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   ii.  Defendants are obligated to pay for the full amount of the Business Income, Civil Authority, Extra Expense, and Business Income from Dependent Properties losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

c.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d.  Ordering Defendants to pay attorneys' fees and costs of suit; and

e.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: August 5, 2020                    Respectfully submitted,


By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423


William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
Florida Bar No. 364721
Shane Smith
ssmith@MerlinLawGroup.com
Florida Bar No. 53130
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

CLASS ACTION COMPLAINT